

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-21-00306-CV

---

IN THE INTEREST OF A.C., A CHILD

---

On Appeal from the 140th Judicial District Court
Lubbock County, Texas,
Trial Court 2020-539,950, Honorable Kelley Tesch, Presiding

---

March 16, 2022

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

Appellant J.T. (Father) appeals the associate judge's final order terminating his parental rights to A.C.[1]  Appellee is the Texas Department of Family and Protective Services.  Through a single issue, Father complains that the evidence is insufficient to support the associate judge's finding that termination of his parental rights was in the best

---

[1] To protect A.C.'s privacy, we will refer to J.T. as "Father," and the child by initials.  *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(b).  The parental rights of A.C.'s mother, M.C., were terminated in the same proceeding and she did not appeal the final order.  *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(K) (affidavit of relinquishment of parental rights) and (2) (termination in best interest).

interest of A.C.  Finding sufficient evidence supports the best interest finding, we affirm the trial court's final order of termination.

## Background

At the time of final hearing, Father was incarcerated in a Mississippi federal prison; he was represented by counsel but did not participate in the hearing.  Father was serving a 235-month sentence in federal prison after pleading guilty to the charge of producing child pornography.  Father will remain incarcerated in the federal penitentiary until approximately 2035.

The evidence also shows that A.C.'s Mother was fourteen years old at the time she was impregnated by Father, then age thirty-three.  Father was indicted in 2018 for alleged sexual assault of a child, i.e., Mother.  Father has been incarcerated since before A.C.'s birth, but has had no contact with A.C.  Father has never completed and returned any of the "parenting packets" sent to him by the Department.

While incarcerated, Father wrote the Department "numerous" letters inquiring of A.C.'s wellbeing and the status of the Department's case.  He also communicated via email with Mother, although still a minor, requesting she perform the functions characterized as an "editorial assistant"—he wanted Mother to research the internet for available domain names for potential magazines Father claimed he intended to publish. Magazine titles proposed by Father were "Play Teen," "Play Tween," and "Shutter Bunny." Father also requested that Mother order and wear bikinis described by one witness as "very scantily clad"; not the type available at a department store.  In addition, Father asked Mother about her younger sister, who was age thirteen or fourteen.

2

The Department's family service plan, which was in evidence, expressed the concern that given Father's sexual relationship with underage Mother and incarceration for crimes involving children, Father will continue to engage in similar conduct when released from prison. "This behavior could cause serious harm, injury, or death to [A.C.]." At trial, the Department's caseworker also expressed concern about the risk of Father manipulating Mother into providing him contact with A.C.

Father wrote a letter to the trial court, requesting joint custody between Father and a relative. Father identified the names of three relatives, abbreviated here as "B.T.," "S.T.," and "C.T.," who all shared the same address in Lubbock. Courtney Jenkins, the Department supervisor for A.C.'s case, testified that background checks revealed B.T. and S.T. had criminal records, as well as with the Department. The Department did not pursue a study of the home shared by B.T., S.T., and C.T. because the Department determined it was an unsafe environment for A.C.

The Department's caseworker testified that at the time of final hearing A.C. remained in placement with foster parents who wished to adopt him. There was also evidence that Mother and the foster parents had entered an "open adoption" agreement.

Father did not present any witnesses, but his attorney said he had been authorized to "relay [Father's] wishes to the Court." The court permitted counsel to speak but did not place him under oath.[2] Counsel explained that Father accepted responsibility for his

---

[2] Given the circumstances here presented, we will consider counsel's unsworn statements as part of the final hearing evidentiary record. *See Banda v. Garcia,* 955 S.W.2d 270, 272 (Tex. 1997) (per curiam) ("Normally, an attorney's statements must be under oath to be considered evidence. [H]owever, the opponent of the testimony can waive the oath requirement by failing to object when the opponent knows or should know that an objection is necessary." (cleaned up)).

actions. Father did not want his parental rights terminated, even though his expected release date from prison was 2035 (when A.C. would be approximately age twenty) and there was no known means of early release. Counsel asked the court to consider Father's list of proposed placements, and added he had no other placement options. Father said he wanted the opportunity to counsel his son as a "father figure." Father blamed the failure to meet the Department's requirements on limitations created by the COVID-19 pandemic. According to counsel, Father wrote the Department regularly, could not take parenting classes because they were not offered in prison, participated in a job training program, and had contacted the Center for Children of Incarcerated Parents.

At the close of evidence, the associate judge verbally rendered a finding that Father was the biological father of A.C.; and had (1) constructively abandoned A.C.; (2) failed to comply with a court order establishing the actions necessary for the return of A.C.; and (3) knowingly engaged in criminal conduct resulting in a conviction and inability to care for A.C. The court also found that termination of Father's parental rights was in the best interest of A.C.[3] On December 2, 2021, the associate judge signed an order memorializing these verbal renditions.

Analysis

Father does not contest the evidence supporting the predicate grounds for terminating his parental rights. Via one issue, Father contends the trial court abused its discretion by finding that termination of his parental rights was in A.C.'s best interest. We

---

[3] *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N),(O),(Q) and (2).

4

construe Father's issue as challenging the sufficiency of the evidence supporting the trial court's best interest finding.[4]

The Due Process Clause of the United States Constitution and section 161.001 of the Texas Family Code require application of the heightened standard of clear and convincing evidence in cases involving involuntary termination of parental rights. *In re E.N.C.,* 384 S.W.3d 796, 802 (Tex. 2012); *In re J.F.C.,* 96 S.W.3d 256, 263 (Tex. 2002). The applicable standards for reviewing the evidence are discussed in our opinion in *In re Z.N.,* 616 S.W.3d 133, 135-36 (Tex. App.—Amarillo 2020, no pet.).

To assess the trial court's best interest determination, we may consider the factors itemized in *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex.1976).[5] While the *Holley* list "is by no means exhaustive, [it] does indicate a number of considerations which either have been or would appear to be pertinent." *Holley,* 544 S.W.2d at 372.[6] "The absence of evidence about some of these considerations would not preclude a fact-finder from reasonably forming a strong conviction or belief that termination is in the child's best

---

[4] "The proper standard of review in a termination of parental rights case is sufficiency of the evidence based on a burden of proof by clear and convincing evidence, not abuse of discretion." *Rodriguez v. Blessed Trinity Adoptions,* No. 01-96-01021-CV, 1998 Tex. App. LEXIS 2019, at *17 (Tex. App.—Houston [1st Dist.] Apr. 2, 1998, no pet.) (not designated for publication).

[5] The *Holley* factors are: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley,* 544 S.W.2d at 371-72.

[6] *See In re R.R.,* 209 S.W.3d 112, 116 (Tex. 2006) (per curiam) (citing Family Code section 263.307 ["Factors in Determining Best Interest of Child"] and *Holley* as providing factors for consideration "when determining whether termination of parental rights is in the best interest of the child" and also referencing Family Code section 153.131(b) which provides "a strong presumption that the best interest of a child is served by keeping the child with a parent.").

interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *In re C.H.,* 89 S.W.3d 17, 27 (Tex. 2005). In some circumstances, evidence of even one *Holley* factor may be sufficient. *Jordan v. Dossey,* 325 S.W.3d 700, 729 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (citing *In re C.H.,* 89 S.W.3d at 27). "Evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest." *In re C.J.F.,* 134 S.W.3d 343, 354 (Tex. App.—Amarillo 2003, pet. denied).

On appeal, Father essentially attempts to match the statements of his lawyer to the *Holley* factors. Against those statements stand unchallenged proof and proper inferences that Father: (1) had intercourse with and impregnated Mother while she was a child; (2) was convicted on a guilty plea of production of child pornography; (3) had been sentenced to 235 months' confinement in federal prison; (4) from prison, contacted Mother, still a child, requesting that she purchase and wear "scantily clad swimsuits"; (5) requested that Mother research website names for a planned magazine related to "teen[s]," "tween[s]," and photography; (6) inquired about Mother's younger sister in the context of his requests from Mother; and (7) proposed the names of three possible placements for A.C., all of whom lived in the same residence and two of whom possessed criminal and Department records. Further, Father does not challenge the findings supported by evidence that he (1) constructively abandoned A.C.; (2) failed to complete court-ordered services without justification; and (3) is unable to care for A.C. due to his incarceration. From this evidence in light of the applicable standards of review, we conclude that legally and factually sufficient evidence supports the associate judge's

6

finding that terminating Father's parental rights is in A.C.'s best interest.  Father's sole issue is overruled.

## Conclusion

Having overruled Father's issue on appeal, we affirm the final order of the trial court.

Lawrence M. Doss
Justice